### WHITNEY v. MARTIN.

(Circuit Court of Appeals, First Circuit. January 24, 1912.)

No. 941.

1. EVIDENCE (§ 129*)—RELEVANCY IN GENERAL.

In an action against an attorney for claimed fraud in professional dealings, it was proper to exclude the record in another suit in which plaintiff recovered judgment against the attorney for independent matters and other evidence not involving the relation of attorney and client

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 388–398; Dec. Dig. § 129.*]

2. APPEAL AND ERROR (§ 1067*)—HARMLESS ERROR—REFUSAL OF INSTRUCTIONS.

In an action against an attorney for claimed breach of duty, any error in refusing to instruct that a client has the right to direct the course to be pursued by his attorney, was harmless where failure to correct the attorney's act complained of was due to plaintiff's own indifference, after the attorney offered to have it corrected.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. § 1067.*]

3. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL—MATTER COVERED.

In an action against an attorney, for breach of professional duty, it was not error to refuse to instruct that defendant was bound to truthfully inform plaintiff of the terms of an arrangement made in plaintiff's behalf, where the court instructed that defendant would be liable for any advantage derived from the transaction unless plaintiff knew about it and did not object.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the District of New Hampshire.

Action by Wilbur F. Whitney against Nathaniel E. Martin. Judgment for defendant, and plaintiff brings error. Affirmed.

William H. Sawyer (Samuel K. Hamilton, on the brief), for plaintiff in error.

Henry F. Hollis (Robert C. Murchie, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This was a suit brought by Mr. Whitney against Mr. Martin, a member of the bar, who had been acting in some matters as his attorney. The verdict was for the defendant, and the plaintiff sued out this writ of error, so it is convenient to speak of the parties simply as plaintiff and defendant. The record is voluminous, and contains a history of many transactions; but the questions left for us are few and simple.

The plaintiff charged the defendant with breaches of professional conduct in several particulars: First, in not following the plaintiff's instructions in regard to the sale of a smelter to one W. R. Dunn, so that the interests of the plaintiff suffered and were damaged; second, that the defendant acquired interests hostile to and in conflict with those of the plaintiff; third, that he failed to conduct himself in connection with selling the smelter in good faith and for the sole protection, advancement and furtherance of the interests of his client, but, on the contrary, conducted himself with bad faith towards his client's interests, so that, in order to purchase his peace with Dunn and avoid a lawsuit with him, the plaintiff paid Dunn $6,000 in December, 1904; and fourth, that this $6,000 the defendant assisted Dunn to obtain from the plaintiff, in order that he, the defendant, might participate in such $6,000, and that the defendant did so participate to the amount of one or more thousand dollars.

It is necessary to observe at the outset that at the trial all these alleged defaults or frauds on the part of the defendant, so far as there was any substantial evidence, resolved themselves into questions of fact, each of which was submitted to the jury under instructions which, so far as they went, were favorable to the plaintiff to such an extent that no exceptions were taken to the charge in regard thereto. Also it is proper to observe that none of the matters charged against the defendant, except that he was alleged to have disregarded the plaintiff's instructions and that he received $1,000, or more, from Dunn, have any support in the proofs. All there is in favor of the plaintiff on the other allegations is only suggestive, of a somewhat nebulous character, and not sufficient to justify a verdict against the defendant if one had been obtained. We do not deem it necessary to sift out and explain all the facts which justify our conclusion in reference to them; because, as they are not likely to arise in any other litigation, it is enough to declare what we have already said.

[1] The first exception grows out of the fact that the plaintiff offered

in evidence a record of certain judicial proceedings in which a judgment was obtained by the plaintiff against Martin for what the plaintiff designates a fraud on him, relating to matters which occurred independently of those in issue here; strictly business relations in lumbering operations which had nothing to do with the relations of the plaintiff and the defendant as client and attorney. Aside from the fact that there is in that record nothing to show plainly that the transactions involved concerned any fraud, there is nothing here to establish the exceptional conditions necessary to bring the case out of the ordinary rule as stated in Greenleaf's Evidence, § 53, and as elaborated in Chase's Stephen's Evidence (2d Ed.) pp. 34 to 41, and 357. We need only add that, while there has been much written on this topic, the circumstances of this case require no reference to any authorities except those we have named.

The next exception relates to an objection by the defendant to the introduction of the answers given in a deposition of the defendant in some other litigation, alleged to bear on his receipt from Dunn of the amount charged in the declaration, which objection was sustained. In that deposition defendant said that he received this as compensation for his services in promoting for Dunn a certain corporation known as the Richfield Mining Company. It is claimed that this was contradictory to Martin's testimony at the trial of this case. The court, not remembering, called for the stenographer's notes, and after they were read made a final ruling. As an admission it would not have helped the plaintiff. There was a long time spent over the matter, and much discussion. The record is confused; but, so far as we understand it, after examination of the evidence pro and con, the learned Circuit Judge was of the opinion that there was no contradiction; and a careful study of the record fails to justify us in reaching any conclusion sufficiently satisfactory to enable us to revise his finding.

The next alleged error concerns the cross-examination of the defendant's witness Paige. Sundry questions were put by the plaintiff and were excluded by the court as immaterial. They related to a circular dated March 1, 1902, which had been put into the case by the plaintiff. We find no explanation how the matter was relevant, unless to the claim made by the plaintiff that the defendant overreached and deceived the plaintiff. We agree with the Circuit Court that the entire matter was immaterial. The circular related to the reorganization of an older smelting or copper company. It was hopeful, as all such circulars are; but we are unable to see any suggestion in it of a deceit on the part of Martin, in any proper sense of the word. It was also subject to the same observations as we make with reference to that judgment we have described.

[2] The remaining exceptions relate to the requests for instructions. We start with a repetition of the fact that no complaint was made of what was contained in the charge. The first brought to our attention is in the following language:

"The right of a client to direct what course his attorney shall pursue in a matter in which he is employed and undertakes, is absolute, and subject

only to the limitations that such instructions must not be in violation of law."

The plaintiff objects that this request was not given, but that in lieu of it the direction to the jury was that his attorney must give his client's business absolute and sole fidelity. Of course, the proposition submitted by the plaintiff was mainly correct; and the mere instruction that the attorney must use fidelity did not meet it. Therefore, if there was any need to give it and it was not given, the exception would necessarily be sustained. The court, however, observed on the only matter as to which such a failure was claimed as follows:

"There is another claim for damages less sharply defined. It is said that through the failure to observe Mr. Whitney's instructions, through the failure to carry them out, through the acquiring of these hostile interests, Mr. Martin got Mr. Whitney into a scrape, caused him to have to pay a considerable sum of money. There you have to determine * * * how much of the money paid out or the money lost was caused by Martin's wrongdoing."

But the fact is that any omission on this point was not prejudicial, because, as we will fully point out later, if there was any original error in this matter on the part of Martin, the correspondence shows that Martin promptly offered to have it corrected, and the fact that it was not corrected arose from the plaintiff's indifference; all of which is plainly shown by the correspondence.

[3] The next exception arose from the following request for instructions made by the plaintiff:

"It was Mr. Martin's duty to truthfully inform Mr. Whitney of the terms of his arrangement with Mr. Dunn made September 23, 1904."

This arrangement related to an agreement made by the defendant in behalf of the plaintiff with Dunn to sell him the smelting property belonging to the plaintiff, about which Martin wrote the plaintiff a letter in very considerable detail, dated September 24, 1904. It is maintained that this letter did not state the full amount at which Dunn was bargaining for the property; but it did not assume to do so. It stated only the amount which the defendant apparently understood the plaintiff was to receive out of the transaction. The learned judge in his charge commented on this letter, and read a large part of it to the jury. He observed that there was no dispute that the figures mentioned in it were much smaller than the figures really made between Martin and Dunn, and that it was claimed there was an intention on Martin's part to be interested in the profits which the property might bring on resale. He distinctly charged the jury that, if so, this would be a breach of duty by the defendant unless the plaintiff knew about it; and he adds that the defendant admitted that rule of law. He continued, moreover, in his charge, that the defendant claimed that the plaintiff did know about the whole transaction, and that it is also a rule of law that, if the plaintiff did know about the transaction, and did not object, no offense was committed. Then the learned judge enlarged on the matter and proceeded to caution the jury to bear in mind everything that appeared at the trial, and concluded:

"Did Mr. Whitney know that Mr. Martin had these other interests, and was dealing in these matters as Mr. Martin says Mr. Whitney knew? Was or was not Mr. Martin acting behind Mr. Whitney's back, and did Mr. Whitney not know it?"

On the whole, he took up a very considerable portion of his charge in pointing out to the jury that the defendant would be liable for any advantage he might have got out of the transaction unless the plaintiff knew about it and did not object thereto. This cut under all requests of this kind.

Of course, there might have been occasions where, notwithstanding a charge in those terms, so emphatic and yet so broad, the court might have been required to charge further in detail if the details had been brought to its attention; but, in the present case, the request was not as to details, and was fully met and covered by the general language used by the court.

Two further requested instructions, numbered 5 and 6, were as follows:

"5. If you find that Mr. Martin on December 7, 1904, in a conference with Mr. Dunn, at Nashua, entered into an arrangement or agreement to assist and subsequently did assist Mr. Dunn, by advice or otherwise, as to the course which he should pursue with Mr. Whitney, for the purpose of enabling Mr. Dunn in his controversy with Mr. Whitney to secure a settlement of his claim for damages on account of Mr. Whitney's refusal to convey to Mr. Dunn, then such conduct on Mr. Martin's part constitutes bad faith, and he becomes liable to reimburse Mr. Whitney for any loss or damage to which such conduct in any way contributed.

"6. If you find that Mr. Martin connived with Mr. Dunn to use his influence with Whitney, or to so conduct himself toward Mr. Whitney as to induce him to sell the smelter to Dunn at a less price than he otherwise would, such acts constitute a breach of good faith toward his client, and entitles him to recover of Mr. Martin any loss which he sustained thereby."

Both of these were covered by general instructions which were in all respects favorable to the plaintiff; and there was no occasion for these more particular instructions. There was, also, no evidence sufficient to go to the jury of any matter to which instruction of this character could relate. All there was was some proof of interviews and conversations between Martin and Dunn when no person was present except themselves, without the slightest proof what those conversations were, or from which it could be inferred what they were, or to what they related. Therefore these requests were wholly in the air.

Two matters were discussed to us which probably were particularly intended to be covered by requests for rulings. It appears that the defendant was employed by the plaintiff to make a sale of the smelter to Dunn. At one time it was clearly understood by the plaintiff that the defendant might receive for his own benefit the whole or a certain portion of whatever the sale price of the property might be in excess of $15,000. This proposition had apparently formally expired, or was at one time abandoned; but it is plain that the subsequent transactions of the parties were to a very large extent based on it, and that it was sub modo kept alive. The transactions cannot be understood except in the light thereof. However, the sale to

Dunn was agreed on, with a mortgage in return, which sale was reported by the defendant to the plaintiff by the letter of September 24, 1904, already referred to. To this the plaintiff replied by letter of September 26th, objecting that certain details of the proposed mortgage were not fully described. A subsequent letter was one of November 24th from the plaintiff to the defendant, in which he wrote that he had received the documents concerning the "Pictou property," referring, as we understand, to the property in question. These documents were inclosed in a letter from the defendant to the plaintiff of November 17, 1904, which purported to cover intended deeds from the plaintiff to Dunn, and also the mortgage in return, which the defendant said he inclosed for examination. The plaintiff thereupon, in a letter of November 21st, said that these documents bore no resemblance to the contract made with Mr. Dunn. This was followed by a letter from defendant to the plaintiff of November 25th, saying that, if there was any error in the papers, the plaintiff had better send them back for examination. They never were returned. No opportunity was given the defendant to obtain such corrections as were required. So far as we can discover, these alleged errors related only to matters of detail, easily remedied; and this is the only fact on which, so far as we can discover, any claim could have been attempted to be based that the defendant did not obey the instructions of the plaintiff.

On the correspondence, if he did not fully obey them, the final fault was thus plainly with the plaintiff, and not with the defendant; and no suit could be maintained by the former against the latter on this account. In consequence, however, of this question about the mortgage, or at least following it, the plaintiff threw up the trade, and Dunn complained that the plaintiff had refused to convey him the property as he agreed to do; and the plaintiff was compelled to pay, or did pay, Dunn $6,000 in consequence thereof. The plaintiff claims that Dunn had made an agreement with the plaintiff from Martin as attorney which fully met the statute of frauds, and gave the plaintiff the right to a conveyance, and that Dunn had failed to inform him in reference thereto. We see no basis for this latter claim; and we do not find any error in the charge, or in the refusal to charge, which would enable us to reverse the finding of the jury on this account. On the other hand, it seems to us that the letter of September 24, 1904, advised the plaintiff that there was an agreement which he should have assumed was sufficient in law.

As to the claim that the defendant shared with Dunn the $6,000 paid to Dunn by the plaintiff, as a division of that $6,000, there was a receipt given by the defendant to Dunn which strongly supported it, and afforded so strong a presumption in that direction that it is difficult to overcome it. Nevertheless, the question whether or not the defendant did so share in that fund, in the proper sense of the expression, or whether the amount which he received was simply a payment from Dunn in consideration of independent services rendered by the defendant to Dunn, was submitted to the jury by the court un-

der proper instructions, and the verdict of the jury, under the circumstances, it is not within our power to set aside.

On the whole, the case at the trial resolved itself into issues of fact, and, as we have said, these issues were submitted to the jury with instructions sufficiently favorable to the plaintiff on every point. It seems to have been thought by the plaintiff that on some propositions the court should have given the jury more specific instructions; but, as we have shown, we find none as to which the documents or the proofs needed special explanations by the court beyond what was given. It is dangerous for a court to undertake, either directly or indirectly, to intensify propositions unless there is occasion therefor. On the whole, we have not been able to find in the record any error prejudicial to the plaintiff.

The judgment of the Circuit Court is affirmed, with costs of appeal for the appellee.